MARTIN *v*. STATE.

Opinion delivered January 16, 1922.

1. CRIMINAL LAW—EVIDENCE OF VENUE.—In a prosecution for receiving stolen goods in Polk County, proof tending to connect the defendant with the goods at Little Rock about 10 months and in Oklahoma about 11 months after they were stolen, was insufficient to prove that defendant received them in Polk County.

2. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE.—One cannot be convicted of a crime upon mere suspicion or conjecture, and a verdict must be based upon some substantial evidence.

3. CRIMINAL LAW—INSTRUCTION AS TO DEFENDANT'S FAILURE TO TESTIFY.—It was error to refuse to instruct the jury that accused's failure to testify should not raise a presumption of guilt against him.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; reversed.

*Norwood & Alley,* for appellant.

1. The evidence is altogether too remote to connect the defendant with receiving the bonds in Polk County.

2. It was improper to permit the prosecuting attorney in his opening statement to the jury to say that the State would show that the defendant robbed a bank at Alma, Ark.; that he had served terms in the United States prisons, and would show the defendant's picture taken in a rogue's gallery. Likewise in his closing argument, it was error to permit him, without reprimand, to state that he believed that the defendant was a member of a conspiracy going through Arkansas and other States, robbing banks. In responding to defendant's request that the court reprimand the prosecuting attorney, and instruct the jury to disregard such statement, by the abrupt reply, "The court will not do it," it in effect indorsed his statement. 69 Ark. 657; 58 *Id.* 482; 71 *Id.* 416; 88 *Id.* 580; 81 *Id.* 31; 141 *Id.* 447; 138 *Id.* 530.

3. It was improper to permit the witness Pepper to testify that he received from the defendant some bonds in Little Rock, without a showing that they were the

bonds alleged to have been stolen, or that they came, from the Bank of Vandervoort. 91 Ark. 555; 54 *Id.* 626; 39 *Id.* 278.

4. The State's instruction number 4, on the subject of conspiracy, as well as the prosecuting attorney's argument thereon, was erroneous. 37 Ark. 274; 41 *Id.* 13; 109 *Id.* 389; 74 *Id.* 574.

5. The court erred in refusing appellant's request for an instruction that the failure of a defendant to testify in his own behalf creates no presumption against him. 110 Ark. 152; 114 *Id.* 398; 145 *Id.* 75.

*J. S. Utley,* Attorney General, *Elbert Gowin* and *W. T. Hammock,* Assistants, for appellee.

1. The evidence was sufficient. While the unexplained possession of the bonds by appellant would not of itself warrant a conviction, yet that fact, taken in connection with other undisputed facts in the evidence, warranted the jury in finding that he received them within jurisdiction of the court, knowing that they had been stolen. 34 Ark. 443; 55 *Id.* 244; 91 *Id.* 492; 19 *Id.* 684; 88 *Id.* 200; 121 *Id.* 45; 216 S. W. (Ark.) 1054.

2. It is not clear just what the prosecuting attorney did say with reference to the bank robbery at Alma. It is too indefinite to consider. However, the latitude allowed the courts in controlling prosecuting attorneys in opening statements will not be disturbed unless there has been a clear abuse of discretion. 2 R. C. L. 410, 411. In the closing argument, the remark that he believed appellant was a member of a conspiracy, etc., was improper, but it was not reversible error. 2 R. C. L. 417; 46 L. R. A. 641 and note.

3. We think Pepper's testimony relative to the appellant's offering to him two $500 registered Liberty bonds was competent. The fact that he was offering such bonds indiscriminately was a circumstance tending to show that he knew at the time he let Carignanno have them that they were stolen. 52 Ark. 303; 72 *Id.* 586; 84 *Id.* 119.

4. On the question of the unexplained possession of stolen goods, the length of time that must elapse after the larceny before such possession ceases to be a circumstance tending to show guilt is purely a question of fact for the jury. 17 R. C. L. 73, 74, § 78.

HUMPHREYS, J. Appellant was indicted in the Polk Circuit Court for grand larceny and receiving stolen property. He was acquitted of the charge of grand larceny, but convicted of receiving stolen property and adjudged to serve a term of five years in the State penitentiary as punishment therefor. From the judgment of conviction an appeal has been duly prosecuted to this court.

The property charged to have been unlawfully and feloniously received by appellant with intent to deprive the owners thereof consisted of one United States registered Liberty bond of the value of $500, the property of B. F. Litchliter, one United States registered Liberty bond of the value of $500, the property of John B. Marling, and one United States registered Liberty bond of the value of $1000, the property of John T. Maloney. The facts revealed by the record, in so far as necessary to a determination of the vital issues presented by this appeal, are, in substance, as follows: The bonds were stolen from the Bank of Vandervoort, in Polk County, Arkansas, on the night of November 13, 1918, at which time the bank was robbed. In October, 1919, the bonds were discovered in the bank at Wilburton, Okla., to which bank they had been sold by Contance Carignanno, a merchant of Wilburton. About the middle of September, 1919, Pete Rapello took appellant to Constance Carignanno for the purpose of selling him the bonds. Carignanno asked the appellant why he didn't sell them to the bank. Appellant said the bank wanted to discount them too much. Carignanno proposed to and did negotiate them to the bank, receiving $1,950 for them, which amount he paid the appellant, less $75 charged for his services. A short time

after Carignanno negotiated the bonds to the bank it informed him that they could not be assigned, as Carignanno had assigned them, and on that account were of no value to the bank. Carignanno immediately informed appellant to that effect, who told him that he had left the money with Rapello; that he would get it and return it to Carignanno. Instead of doing so, he departed and was later arrested and placed under bond. After giving bond, he ran away, but was rearrested and placed in jail, where he remained. In the fall of 1919 appellant attempted to negotiate in Little Rock, Arkansas, United States registered Liberty bonds of the same denomination as the bonds in question, but failed to do so because they had not been assigned by the registered owners.

Appellant did not take the witness stand in his own behalf, and requested, but was refused, an instruction charging the jury that his failure to testify should not create any presumption against him.

Appellant's first contention is that the judgment should be reversed because the evidence was insufficient to show that appellant committed the offense charged in Polk County, Arkansas. There was proof tending to connect appellant with the bonds at Little Rock about ten months, and at Wilburton, Okla., about eleven months after they were stolen, but there was no legal proof tending to show that he received them in Polk County. The times he was found in possession of the property were remote and the places distant from the scene of the larceny. So far as disclosed by the evidence, appellant never was in Polk County until he was arrested and taken there. It cannot be said, in the light of this record, that appellant was found in possession of recently stolen property, unexplained, which might be regarded as a circumstance tending to establish his guilt of the crime charged. The remoteness of the time and the distance from the scene of the robbery when appellant was found in possession of the stolen property is insufficient from which to draw a legitimate

inference that the stolen property was received by appellant in Polk County. A conjecture or suspicion might be drawn from the fact that appellant received the bonds in Polk County, but one cannot be convicted of a crime upon mere suspicion or conjecture. A verdict, to stand, must be based upon some substantial evidence. The venue therefore was not sufficiently established.

Appellant also insists that the court committed reversible error in refusing to instruct that it was appellant's privilege to testify or not, and that his failure to do so should not raise a presumption of guilt against him. The privilege of election to testify in his own behalf is extended by statute in this State (Crawford & Moses' Digest, § 3132) to any one charged with the commission of crimes, offenses and misdemeanors. In order to give a defendant the benefit of this election, it is the duty of trial courts, when requested at the proper time, to inform the jury that a failure to testify in his own behalf shall not raise any presumption of guilt against him. Otherwise a jury might regard a defendant's silence as an admission of guilt and thereby deprive him of the election accorded him by statute. *Threet* v. *State,* 110 Ark. 152; *Lee* v. *State,* 145 Ark. 75.

Other assignments of error are insisted upon by appellant for reversal, such as alleged improper statements and argument of the prosecuting attorney, which we deem it unnecessary to consider, as they will not likely recur upon a retrial.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.