**UNITED STATES of America ex rel.
Robert WATSON**

v.

**COMMONWEALTH AND COMMON
PLEAS COURT OF PENNSYL-
VANIA and Warden Rundle.**

Misc. No. 3385.

United States District Court
E. D. Pennsylvania.

Nov. 15, 1966.

Robert Watson, pro se.
No appearance for respondent.

## MEMORANDUM

JOSEPH S. LORD, III, District Judge.

On April 15, 1948, relator was sentenced by the Court of Quarter Sessions of Philadelphia County to a term of ten to twenty years upon conviction of burglary, larceny and receiving stolen goods. He was twice paroled, and for crimes committed while on parole, he was sentenced to three to eight years on March 6, 1964, and to one to two years on May 28, 1964. All the sentences were to run consecutively. On February 4, 1966, we granted relator's petition for habeas corpus as to the 1948 sentence. United States ex rel. Watson v. Myers, 250 F.Supp. 292 (E.D.Pa.1966).

Relator now complains that as a matter of constitutoinal right he is entitled to have the sixteen and one-half years served on the illegal 1948 sentence credited against the unimpeached sentences of March 6, 1964 (three to eight years) and May 28, 1964 (one to two years). Obviously, if full credit were given, Watson would be entitled to immediate release from custody of any kind.

For the reasons which appear below, we have concluded that the writ must be denied.

### I.

█ There is no definitive allegation in relator's petition to the effect that he has exhausted available state remedies. On the prescribed form which our court provides for the filing of habeas corpus petitions, there appears the inquiry:

"13. Prior to this petition have you filed * * * any petition in a state court for habeas corpus or any other post-conviction remedy?"

Watson has answered, "No." There are admittedly other vague indications in the petition that the relator did attempt to exhaust state remedies. But it would be foolish for us to entertain the petition on a reconstruction of largely incoherent allegations in the petition when simple, direct means have been afforded relator to set forth his state court efforts to obtain relief.

Therefore, we would be inclined in the first instance to deny the writ for failure to exhaust state remedies.

## II.

■■ There is, however, no reason to abstain from considering the petition at this time because we have found it to be completely lacking in merit. See United States ex rel. Drew v. Myers, 327 F.2d 174, 183 (C.A.3, 1964), cert. denied, 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed. 2d 52 (1964). While we are somewhat sympathetic to relator's situation, we cannot conceive of a constitutionally mandated system of accumulated prison credits. Other courts have concurred in our incredulity: Tucker v. Peyton, 357 F.2d 115, 118 (C.A.4, 1966); Jones v. Ellsworth, 240 F.Supp. 246 (Mont.1965), aff'd, 353 F.2d 209 (C.A.9, 1965); United States ex rel. Jones v. Nash, 264 F.2d 610 (C.A.8, 1959), cert. denied, 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959). Such a requirement of credit for time served under vacated sentences would enable recidivists to obtain release or to avoid incarceration altogether by the simple device of pleading a prior invalid imprisonment. Even in those cases where a sentence is vacated and the relator is re-tried for the very same offense, there is no constitutional requirement of credit for the time already served. See United States ex rel. Jones v. Nash, supra, 264 F.2d at 613; Jones v. Ellsworth, supra; but see Patton v. State of North Carolina, 256 F.Supp. 225 (W.D. N.C.1966).

Quite obviously, the many years Watson spent in custody failed to achieve the desired corrective effect on whatever criminal disposition he may have had. However unfortunate and even tragic relator's confinement under the illegal 1948 sentence might have been, it cannot excuse his later criminal conduct. A sentencing court or parole board may want to consider the fact of Watson's long confinement under the vacated judgment as bearing on the severity of sanctions to be imposed for the later offenses. But our standards of collateral review do not permit interference with such discretionary state criminal procedures in the ordinary case; our concern is only with what constitutional due process demands. United States ex rel. Jones v. Nash, supra.

## III.

Although relator is not entitled to receive credit against the 1964 sentences for time served under the invalid 1948 sentence, it would nonetheless appear that the invalidity of the earlier sentence does have an impact on the later sentences. In Commonwealth ex rel. Ulmer v. Rundle, 421 Pa. 40, 218 A.2d 233 (1966), relator was confined under a valid sentence imposed on June 13, 1961. He sought to attack a sentence imposed in 1959, although he had finished serving that sentence. The court held that relator had standing to attack the already completed sentence, because a successful attack would advance the computation of the later valid sentence. The court said, at pages 43–44, 218 A.2d at page 234:

"While it is true that Ulmer is not now confined on the 1959 invalid judgment, the duration of his imprisonment on the valid judgments entered in 1961 is substantially affected, and will be extended illegally for a period of many months as a result of the sentence imposed in 1959. If the latter is allowed to stand unimpeached, the first valid sentence imposed on June 13, 1961, will be computed from the expiration date of the invalid 1959 sentence, and its commencement and expiration dates illegally delayed. * * * The record is remanded to the court of original jurisdiction with directions * * * to enter an order directing that the sentence imposed [in 1961] begin from the date of commitment on the charge there involved."

See also Tucker v. Peyton, 357 F.2d 115 (C.A.4, 1966).

Thus, it would seem that, in view of the invalidity of the 1948 sentence, the first 1964 sentence will now be computed from the date of its imposition,— March 6, 1964,—instead of from February 4, 1966, when we declared the 1948 sentence invalid. Thus computed, the maximum expiration date of the first

**476**

1964 sentence would be March 6, 1972, and the second of one to two years would be March 7, 1974. Undoubtedly, in light of *Ulmer*, Pennsylvania will so compute Watson's 1964 sentences. At any rate, it is obvious that any question as to computation is now premature.

Petition denied.